THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ASBESTOS WORKERS PHILADELPHIA WELFARE AND PENSION FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., ANDREW R. JASSY, BRIAN T. OLSAVSKY, and DAVID FILDES,<br><br>Defendants. | No. 2:22-cv-00934-JCC<br><br>**PLAINTIFF'S RESPONSE TO NOTICE OF RELATED CASES** |

RESPONSE TO NOTICE OF RELATED CASES
CASE NO: 2:22-CV-00934-JCC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000

Plaintiff Asbestos Workers Philadelphia Welfare and Pension Fund ("Plaintiff"), by and through its counsel, respectfully submits this response to the Notice of Related Cases filed by Defendants Amazon.com, Inc., ("Amazon" or the "Company"), Andrew R. Jassy, Jeffrey P. Bezos, Brian T. Olsavsky, David A. Zapolsky, and Nate Sutton (collectively, "Third-Party Seller Defendants") in *Joyce v. Amazon.com, Inc.*, No. 2:22-cv-00617-JHC (the "Third-Party Seller Action"). *See* Third-Party Seller Action, ECF No. 36. That notice improperly seeks to relate the Third-Party Seller Action to *Asbestos Workers Philadelphia Welfare and Pension Fund v. Amazon.com, Inc.*, No. 2:22-cv-00934-JCC and *Detectives Endowment Association Annuity Fund v. Amazon.com, Inc.*, No. 2:22-cv-00950-JRC (collectively, the "Warehouse Actions").

## I. INTRODUCTION

1. The Third-Party Seller Action and the Warehouse Actions are not related. As Third-Party Seller Defendants concede, "the complaints set forth different theories of alleged fraud—here, concerning Amazon's alleged use of third-party seller data, and in [the Warehouse Actions], concerning Amazon's fulfillment capacity." Third-Party Seller Action, ECF No. 36 at 1.

2. The distinctions between the Third-Party Seller Action and the Warehouse Actions are important and demonstrate why the cases are not related. The Third-Party Seller Action turns on allegations that Amazon "engaged in anticompetitive conduct in its private-label business practices" by "giving Amazon products preference over those of its competitors and using third-party sellers' non-public data to compete with them." Third-Party Seller Action, ECF No. 36 ¶ 6. To succeed in the Third-Party Seller Action, plaintiffs need to prove that Amazon misrepresented those facts during the period from February 1, 2019, to April 5, 2022, and that the supposed truth was revealed to investors in connection with an April 6, 2022 report that the SEC was investigating Amazon and its use of third-party-seller data. Discovery in that case will focus on Amazon's private label business and tactics used to compete with third-party sellers, including Amazon's use of data regarding those third-party sellers. Discovery will also focus on whether the stock drop pled in the Third-Party Seller Action was actually caused by the

| RESPONSE TO NOTICE OF RELATED CASES<br>CASE NO: 2:22-CV-00934-JCC | BYRNES KELLER CROMWELL LLP<br>1000 Second Avenue, 38th Floor<br>Seattle, WA 98104<br>(206) 622-2000 |
|---|---|

announcement of the SEC investigation or actually occurred prior to the news of the SEC investigation becoming known to the market.

3. None of those issues are relevant in the Warehouse Actions. In contrast, the Warehouse Actions turn on Amazon's expansion of its physical distribution network, including its warehouse space. The alleged misrepresentations in the Warehouse Actions have nothing to do with the competition between Amazon branded products and third parties. Instead, the Warehouse Actions assert the distinct allegations that beginning by July 30, 2021—910 days after start of Amazon's alleged misconduct relating to third-party sellers—the Company misled investors regarding its warehouse and fulfillment center capacity, which Amazon knew by that point had greatly outpaced demand. *See* ECF No. 1 ¶¶ 5-6. The Warehouse Actions allege that investors did not learn the truth about Amazon's overdevelopment of warehouses and fulfillment centers until April 28, 2022—more than three weeks after the end of the class period asserted in the Third-Party Seller Action.

4. There is also not a single overlapping misrepresentation between the Third-Party Seller Action and the Warehouse Actions. Given that the complaints "set forth different theories of alleged fraud," as Defendants concede, and involve distinct misrepresentations to investors about unrelated topics during different time periods, the two cases will also require different factual and expert proof and call for vastly different discovery. This means that not only will the plaintiffs in the two cases be seeking entirely different sets of documents, but discovery would involve different witnesses and third parties. Given these pronounced distinctions, it is not surprising that there are only three overlapping defendants between the two cases, one of which is Amazon, and those three parties face liability for distinct statements and conduct in the two cases. These differences demonstrate why allowing the Third-Party Seller Action and the Warehouse Actions to proceed separately would not result in an unduly burdensome duplication of labor or expense, nor could they end in conflicting results. As such, the actions should not be deemed related.

RESPONSE TO NOTICE OF RELATED CASES
CASE NO: 2:22-CV-00934-JCC

2

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000

## II.   ARGUMENT

### A.  The Applicable Legal Standard

5.     In determining whether actions are related, Local Civil Rule 3(g)(4) permits relation only when the actions "(A) concern substantially the same parties, property, transaction, or event; *and* (B) it appears likely that there will be an unduly burdensome duplication of labor and expense or the potential for conflicting results if the cases are conducted before different judges."  LCR 3(g)(4) (emphasis added).  Neither of those factors support relating the Third-Party Seller Action and the Warehouse Actions.

### B.  The Third-Party Seller Action and the Warehouse Actions Are Distinct

6.     The most critical distinction between the Third-Party Seller Action and the Warehouse Actions is that they rely on "different theories of alleged fraud."  Third-Party Seller Action, ECF No. 36 at 1.  Indeed, the conduct of the defendants that gives rise to the claims in the two actions is completely distinct, based on separate aspects of Amazon's business, and involving distinct representations to investors.  Therefore, the central facts that plaintiffs need to prove to succeed in the Third-Party Seller Action, relating to anticompetitive behavior and third-party sellers, are not at issue in the Warehouse Actions.  Further, the two actions have vastly different class periods, and seek to recover losses caused by entirely distinct disclosures.

7.     Specifically, the Third-Party Seller Action alleges violations of the federal securities laws during a 38-month period from February 1, 2019, to April 5, 2022, and alleges that investors learned the truth about Amazon's anticompetitive conduct towards third-party sellers on April 6, 2022, when *The Wall Street Journal* published an article revealing an SEC investigation into Amazon's third-party-seller data.  In contrast, the Warehouse Actions allege violations of the federal securities laws during a much shorter, nine-month period of July 30, 2021, to April 28, 2022, which ended when Amazon announced billions of dollars in additional costs needed to address the overcapacity of its warehouse and distribution network.

8.     Indeed, in their Notice of Related Cases, the Third-Party Seller Defendants can only allege that misrepresentations occurred during the same earnings conference call.  *See*

RESPONSE TO NOTICE OF RELATED CASES
CASE NO: 2:22-CV-00934-JCC

3

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000

Third-Party Seller Action, ECF No. 36 at 1-2. They do not say that the same statements made on that conference call were relevant to both cases, because they are not.

9. Specifically, the Third-Party Seller Action asserts that, in response to a question from an analyst at Oppenheimer regarding "why third-party seller services experienced less growth," Defendant Olsavsky stated, in relevant part:

> On 3P, I think what you're seeing is a decreasing growth rate, much like the rest of the business, as I mentioned earlier, we're dealing with the very high growth period from Q3 of 2020 through Q1 of 2021. But on a two-year basis, you're still seeing 31% compounded annual growth in the 3P. We continue to invest a lot to make sellers – help sellers be successful on our site. They're a big consumer of advertising as well because they use it to build their brands and add – enable customers to see their selection and make purchases. So we're very happy with the third-party seller services businesses, and again, looking for ways to help sellers be successful. Third-Party Seller Action ECF No. 36 ¶54.

10. In contrast, the Warehouse Actions assert claims based on the following statements made on that earnings call:

> Despite lapping 2020's extraordinary sales growth, we continued to see an increase in customer demand and sales during the remainder of 2021, even as the economy opened back up. . . . We have invested significantly to keep pace with this demand, including nearly doubling our operations capacity in the past two years, expanding our fulfillment center footprint while adding significant transportation assets to ensure fast on-time delivery. . . . [T]he fundamentals of our retail business are strong, and we are optimistic about a number of growth businesses and a strong innovation pipeline. ECF No. 1 ¶32.

11. Further, the Warehouse Actions assert that, in response to a question from an analyst at Goldman Sachs regarding Amazon's investments to expand the Company's same-day delivery capacity, Defendant Olsavsky assured investors that "[w]e feel good about where were we are. We're continuing to build capacity that enables us to hit those [same-day delivery] cutoffs. . . . [A]s we've mentioned, we've doubled the capacity in the network over the last two years. That is not all just to handle today's volume. It's also to handle getting closer to the customer and being able to ship faster. So, we like where we stand. . . . We like the progress

RESPONSE TO NOTICE OF RELATED CASES
CASE NO: 2:22-CV-00934-JCC

4

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000

we've been making lately, but we think the future is bright on that dimension." Olsavsky further represented that "there's a lot of expansion that's been going on in the network, and we feel good about the basic contributors of profitability." Obviously, none of those statements relate to the competition between Amazon's private label business and third-party sellers.

12. The Warehouse Actions also assert that in response to a question from an analyst at JPMorgan concerning Amazon's growing fulfillment network and expected spending in the coming year, Defendant Olsavsky discussed the Company's capital expenditures, noting that:

> just under 40% of CapEx is going to infrastructure. . . . About just under 30% is fulfillment capacity, building warehouses, warehouse only, not transportation. . . .
>
> If I look to the future, we're still working through some of our plans for 2022, but it's coming into focus a bit. We see CapEx for infrastructure going up. We still have a very fast-growing business that's growing globally, and we're adding regions and capacity to handle usage that still exceeds revenue growth in that business. So we feel good about making those investments.
>
> On the fulfillment center side, that's about 30% of the spend in the last two years. We see that moderating, and that will probably now match growth of our underlying businesses. ECF No. 1 ¶34.

13. While these misrepresentations came from the same defendant on the same call, no other similarities between the misstatements exist. And this is the only date on which Amazon and its executives are alleged to have lied about both the competition with third-party sellers and the development of warehouse and distribution capacity. The mere fact that Amazon executives rarely made misstatements about these two distinct topics on the same day highlights that the two litigations involve vastly different subject matter. After reviewing the actual misrepresentations asserted in the various actions, to claim that these different misrepresentations amount to "one common event" is inaccurate. See Third-Party Seller Action, ECF No. 36 at 1.

### C. The Local Rules Do Not Support Relating These Actions

#### 1. The Actions Concern Neither the Same Parties, Transactions, or Events

14. The actions do not concern substantially the same parties, transactions, or events. While all of the actions name Amazon, CEO Andrew R. Jassy, and CFO Brian T. Olsavsky as

RESPONSE TO NOTICE OF RELATED CASES
CASE NO: 2:22-CV-00934-JCC
5
BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000

defendants, the Third-Party Seller Action includes three defendants not named in the Warehouse Actions (Jeffrey P. Bezos, David A. Zapolsky, and Nate Sutton), and the Warehouse Actions name David Fildes, who is not a defendant in the Third-Party Seller Action.  Contrary to the "substantial overlap in . . . defendants" asserted by the Third-Party Seller Defendants, in reality less than half of the defendants overlap.  Third-Party Seller Action, ECF No. 36 at 1.  That those overlapping defendants are the Company itself, as well as its CEO and CFO—who sign filings with the SEC and speak on calls with analysts—suggests that all securities actions against a given company would be "related" because virtually all federal securities actions name the company, CEO and CFO as defendants.

15. In addition, as set forth above, the actions assert claims based on entirely different misrepresentations during vastly different time periods.  Therefore, the actions do not "concern substantially the same parties, property, transaction, or event."  LCR 3(g)(4)(A).  Accordingly, the Third-Party Seller Action and the Warehouse Actions are not related.

### 2. There Will Be No Duplication of Labor or Expense, Nor Is There a Potential for Conflicting Results

16. Regardless of whether the actions are related, plaintiffs will have to prosecute, and defendants will have to defend against, both the Third-Party Seller Action claims concerning anticompetitive conduct and third-party sellers during the longer class period, and the Warehouse Actions' claims concerning the increase in warehouse and fulfillment center capacity during the shorter class period.  Thus, the costs and other burdens of litigation will be substantially the same whether or not the actions are related.

17. Moreover, should the Third-Party Seller Action and the Warehouse Actions remain unrelated, there is no potential for conflicting results.  That is, it is possible to prove that defendants in the Warehouse Actions misled investors regarding Amazon's warehouse and fulfillment center capacity, which greatly outpaced consumer demand, even if it cannot be proved that Amazon engaged in anticompetitive conduct regarding third-party sellers.  Those two results would not be inconsistent.  Similarly, because the alleged misstatements are different, inconsistent results regarding the falsity or materiality of a given misrepresentation are not

RESPONSE TO NOTICE OF RELATED CASES
CASE NO: 2:22-CV-00934-JCC
6
BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000

possible. Accordingly, if the outcomes of summary judgment or trial in the actions differ, that will be the result of differences in the facts and merits of the two distinct claims.[1]

18.     It is, therefore, not "likely that there will be an unduly burdensome duplication of labor and expense or the potential for conflicting results if the cases are conducted before different judges." LCR 3(g)(4)(B). Accordingly, the Third-Party Seller Action and the Warehouse Actions are not related.

### III.   CONCLUSION

19.     For the reasons discussed above, the Third-Party Seller Action and the Warehouse Actions should not be related.

DATED: July 13, 2022                    Respectfully submitted,

**BYRNES KELLER CROMWELL LLP**

By: /s/ Bradley S. Keller
    Bradley S. Keller, WSBA #10665
By: /s/ John A. Tondini
    John A. Tondini, WSBA #19092
    1000 Second Avenue, 38th Floor
    Seattle, Washington 98104
    Telephone: (206) 622-2000
    Facsimile: (206) 622-2522
    Email: bkeller@byrneskeller.com
          jtondini@byrneskeller.com

*Liaison Counsel for Plaintiff Asbestos Workers Philadelphia Welfare and Pension Fund*

-and-

---

[1] The Third-Party Seller Defendants' assertion that an earlier complaint filed by counsel for plaintiff in *Detectives* that was subsequently voluntarily dismissed is somehow proof that the actions should be related finds no support in the law. *See, e.g., Green v. United States*, No. 2:21-cv-1275-RAJ-DWC, 2021 WL 6754996, at *2 (W.D. Wash. Nov. 1, 2021), *report and recommendation adopted,* 2022 WL 279066 (W.D. Wash. Jan. 31, 2022) (declining to relate action to another action filed on behalf of the same plaintiff and similar defendants where the prior case was subsequently dismissed). If anything, the fact the plaintiffs in the dismissed action recognized that the two theories of fraud were distinct and dismissed their complaint further supports that these cases should proceed separately.

| RESPONSE TO NOTICE OF RELATED CASES<br>CASE NO: 2:22-CV-00934-JCC | 7 | BYRNES KELLER CROMWELL LLP<br>1000 Second Avenue, 38th Floor<br>Seattle, WA 98104<br>(206) 622-2000 |

| | |
|---|---|
| 1 | |
| 2 | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** |
| 3 | Avi Josefson (to be admitted *Pro Hac Vice*) |
| | avi@blbglaw.com |
| 4 | Adam Hollander (to be admitted *Pro Hac Vice*) |
| | adam.hollander@blbglaw.com |
| 5 | Scott R. Foglietta (to be admitted *Pro Hac Vice*) |
| | scott.foglietta@blbglaw.com |
| 6 | 1251 Avenue of the Americas |
| 7 | New York, NY 10020 |
| | Telephone: (212) 554-1400 |
| 8 | Fax: (212) 554-1444 |
| 9 | *Counsel for Plaintiff Asbestos Workers Welfare and Philadelphia Pension Fund* |

RESPONSE TO NOTICE OF RELATED CASES
CASE NO: 2:22-CV-00934-JCC
8
BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 13th day of July, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter. In addition, the foregoing has been emailed to the Court and to the counsel of record in *Joyce v. Amazon.com, et al.*, No. 2:22-cv-00617-JHC:

The Honorable John H. Chun (chunorders@wawd.uscourts.gov)

Adrienne McEntee (amcentee@terrellmarshall.com)
Audra J Soloway (asoloway@paulweiss.com)
Benjamin T.G. Nivison (bnivison@rvflegal.com)
Beth E Terrell (bterrell@terrellmarshall.com)
Brian D Buckley (bbuckley@fenwick.com)
Daniel J Kramer (dkramer@paulweiss.com)
Daniel S Sinnreich (dsinnreich@paulweiss.com)
Duncan Calvert Turner (dturner@badgleymullins.com)
J Alexander Hood , II (ahood@pomlaw.com)
Jeremy A. Lieberman (jalieberman@pomlaw.com)
Martha L Goodman (mgoodman@paulweiss.com)
Roger M Townsend (rtownsend@bjtlegal.com)

/s/ John A. Tondini
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
jtondini@byrneskeller.com

RESPONSE TO NOTICE OF RELATED CASES
CASE NO: 2:22-CV-00934-JCC
9
BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000